Case number 2012-5958-2013-6092. Michael Leman v. United States of America. Argument to exceed 15 minutes per side. Mr. Parton for the appellant. Good morning, and may it please the Court, I am Fred Parton, counsel for the appellant, and I would respectfully request the Court's permission to remain seated during my argument. All right. Thank you. This is an— Would you like to reserve time for— I'm sorry, Your Honor. Yes, I would like to reserve, if I may be permitted, three minutes for rebuttal. Thank you. This is an appeal from the Eastern District of Kentucky on two consolidated cases involving Mr. Leman, who was convicted of conspiracy to money launder and conspiracy to distribute drugs and received a sentence of 180 months or 15 years. We have presented five issues for consideration of this Court. I'd like to address the first two issues and on the three remaining, just have those submitted on the brief. The two issues are the testimony, which we contend is the perjured testimony of government witness, Tanya Snook, and the deliberate ignorance instruction that was given by the Court. In this case, Ms. Snook, who was the government's, I think, primary witness, I think without her testimony or without her credible, some credible testimony from her, I think the government's case falls. She testified at the trial on March the 6th, the second day of trial, when called by the government. And then sometime later, after other witnesses had been called, the trial counsel in the records that were in evidence and noticed that those records, specifically for a Larry Goebel and a Brenda Goebel, were in fact identical, except for the names were identical, and called this to the Court's attention on March the 14th, after the testimony of Larry Goebel. There was a hearing. There was also, I think, the trial court also later issued a written ruling, and then there was a motion for a new trial, and that was also part of that, which is the consolidated appeal that the Court denied. I think what bothers me most about this argument, so I'd like you to address this if you would please, is that if you had had no opportunity at that stage in the trial to address this question about whether a testimony was false, then I think your argument would have certainly some more weight. But here, as I understand it, the judge allowed you to recall that witness and cross-examiner on these questions that you think then would have demonstrated or more clearly demonstrated that there had been pejorious testimony, and you declined to do so. So, it just seems odd to me that having had that avenue available to you, you get a do-over now because you say the government had this obligation to do something that you could have done yourself. Judge, that's correct. And I think the answer to that is, first of all, that there were over 6,000 documents that the government had, Exhibit 1, for the Philadelphia clinics in a banker's box, or boxes. This was one of those documents, medical records for Larry Goebel and Brenda Goebel. And in looking at the documents, and I apologize, while they are in the record, they are identified in the record, they were not specifically identified in the brief. I do have copies if the court would like me to provide those to counsel and to the court, to the panel, I have those copies. But this, nevertheless, was not found until later in the trial, until after the testimony of Larry Goebel. Larry Goebel testified, first of all, what Tanya Snook had done, contrary to what she said. While this was inconsistent, this was just a matter, I think, at that point in time, a matter of credibility. But then, when the medical records are viewed and seem to be exactly identical, and when particularly Tanya Snook had testified that the only two records that she ever forged or changed were the two records that she pled guilty to, and that there were no other records that she, she was a drug addict and some other things that went to her, may have gone to her credibility, but these were the only two records specifically, the only two records, she says, that I forged or changed were two records that I pled guilty to for Eric Tackett and Timothy Wayne Hall. That's it, period. The records that we have, and I believe that the record in the court below clearly establishes that this is then perjured testimony, because Tanya Snook is the only one who had access to these records. She had been at the Slidell Clinic. She's now at the Philadelphia Clinic. She testified. Dr. Rowland faxed up the records. He said, no, I didn't. I get all that, but it seems to me you're missing the point of the question. Let's assume that the testimony was false. Basically, you want to impose a duty on the government to do something because you come into court during a trial and say, see, look at this. Something has gone wrong. And if you had no other way to address that before the jury, I would at least understand the argument. But you had the means at your disposal to call that fully to the attention of the jury. And I'm not being critical of among 6,000 records you didn't discover it until even the middle of the trial. I'm not arguing you should have discovered it earlier. I'm just asking, once you did discover it, then why should we not think that your ability to call her back to the stand and present this to her and get her side of the story was a prerequisite here? Because I believe, as we have cited the law, that that obligation is on the government. Now, the government wasn't going to do that. And to this day, two years later, they've never contacted Tanya and said, what's the deal here? Once it is shown, as the court indicated, assuming it's perjury, once that's shown, I think the obligation is on the government to correct that, not the court. We asked the court only because the government said, well, there's a different process examiner recall or whatever. She had already been called. Let me tell you why I'm asking the question. Yes, sir. We, I hope, should be looking ahead to see what a finding like this would do in other cases. And I assume if you try these criminal cases, you know that there is perjury committed by government snitching witnesses all the time. I don't mean that they're presenting it knowingly and intentionally. But there's, in every single trial, a witness says this, and then there's evidence that shows it's really that. So what is the standard you would have us impose upon the court and the government to then come in and take some official corrective action every time they think somebody might have lied? Well, first of all, there's no contention here or allegation that the government knowingly called this witness knowing she was going to perjure herself. I think this was found after the fact. It's never been, not at all. But here's what we're asking the court, and I think the standard should be, is that if this is shown, not maybe inconsistent or otherwise, but if it is shown that the statement is perjury, and whether beforehand or afterhand, if it's discovered later, that it's the government's burden then to correct that to the court, to avoid a substantial injustice. Now, to hold otherwise, to hold other... Does that apply to any alleged falsehood, or does it have to be material? I mean, how do they address that? It has to be material, and it has to be perjured. It cannot be merely inconsistent. It can't be about some irrelevant matter. It has to be a material matter. It has to be perjury. It has to be a material matter. So one more thing, not to belabor this. So then basically the trial has to stop, and there has to apparently be a separate hearing that tries to assess whether something was indisputably false, which I think is the standard you're imposing, and what that's... Does the judge then make that fact-finding? Because normally juries do fact-finding. But the jury doesn't have that... I know. I understand. Does the judge then make a fact-finding, witness you lied, government you got it corrected, during the trial in this little mini-trial? First of all, I think it's the obligation of the government. Once they find that there is a perjured statement, to correct that in the record. There wouldn't have to be no hearing whatsoever. They just recall the witness or advise counsel. Our witness lied. That's where we are. But in this case... There wouldn't have to be a hearing like there was here. In this case, they don't agree with you. Well, in this case, they not only didn't agree with us, but they didn't even make an inquiry to that. But to hold otherwise, to shift that burden to the defense, if you have a perjured statement and it's material, after she's gone, wait until the government finishes their case, and then for our case, to call her as our witness, that I think... First of all, I think the jury is going to wonder what is going on here. Is this a fishing expedition? Because we don't know what she's going to say. We made every attempt to... The government had total control of this witness. We weren't able to speak with her. She had her counsel. The record shows, in her testimony, her attorney was in the courtroom. She wouldn't talk to the defendants, to the defense counsel. To hold otherwise puts the burden on the defendant to call her, in his case, as his witness, and to give her some, I guess, some standing, may some standing in the eyes of the jury of veracity, because now she's our witness, and to go on this fishing expedition and say, Well, you know, they said this, and we've got this paper, and whatever. I don't think that is proper. I don't think that should be the standard. I don't think that is the standard. I think once the perjury is shown, once it's material, then the burden is on the government to correct that perjury, to avoid a fundamental unfairness of the trial. And this is not just a case where we have inconsistent statements by Ms. Snook. This is a statement where we have an actual record that she would have done. She'd been the only one to do it, to change that record. The witnesses had said she gave us extra prescriptions. She's the only one with that ability to do that, and for whatever reason, when she testified, she said, No, the only thing I did was two. I never did any more. Two, that's it, period. I guess you're out of time for the moment, unless you want to take some time from your rebuttal time. I'm good. All right. We'll hear from opposing counsel. Good morning, Your Honors, and may it please the Court. Nina Goodman on behalf of the United States. I'd like to first clarify a couple of things in the record here. The first thing, and I think this is essential to understand, is that Ms. Snook testified on direct examination by the government that she wrote in Brenda Goebel's name on these records, this prescription that's in dispute here. There's no doubt about that, and it's undisputed in the record. And that's at page ID number 23132314. The other undisputed fact is that the original prescription did come from Slidell, as Ms. Snook testified. Dr. Rowland identified the prescription, the original prescription, and identified his signature on the photocopy. And Ms. Snook also testified consistently that, yes, that is Dr. Rowland, the Slidell doctor's prescription. So there's no dispute on those two facts, that she did write in the name. She said that. She testified that very openly. And what she testified was that the documents were faxed from Slidell, where we know this document originated, and that she then wrote in the name. As far as I can tell, the dispute in this case boils down to whether the prescription was photocopied by someone in Slidell and then sent to Philadelphia, or whether Ms. Snook photocopied it and then, as she acknowledged, wrote in the names. There's no evidence on that either way. So rather than being a claim of perjured testimony, this seems to be a claim that the government, or neither side, asked an additional question that would have been suitable for cross-examination because no one was aware of the photocopying until later. But that is the purpose of cross-examination. And it's also important to remember that not only was Mr. Lehman's counsel given the opportunity to recall Ms. Snook, and I'm not aware of evidence that she wouldn't be available. The only evidence in the record I'm aware of is that at the post-trial hearing on the motion for new trial, the prosecutor stated that he had alerted Ms. Snook's counsel after the judge said, well, you can recall her. He had alerted Ms. Snook's counsel to be sure that she would be available. But there's no evidence either way on that, and so this is where an additional question wasn't asked of Ms. Snook. Mr. Lehman chose not to cross-examine Ms. Snook. Instead, he chose to put on this evidence, and he did put on this evidence before the jury. He featured it. He called Dr. Rowland as a defense witness. He had Dr. Rowland say, yes, that's my signature. I never saw Brenda Goble, which was consistent with the testimony of Ms. Snook, that he wasn't in Philadelphia. I don't know how this got to Philadelphia. And counsel also argued this extensively to the jury in his closing argument. I'd also like to respectfully disagree with opposing counsel because far from being the government's primary witness, this possible conflict in the evidence about who photocopied the document before Ms. Snook admittedly wrote the names on it is not material at all to the government's case. In fact, Ms. Snook wasn't material in all of her testimony. She was in Philadelphia for three months in 2005. She left. She went back to Slidell. She subsequently fired by the company. She appears in no later portion of the case. The conspiracy continues for two more years until the middle of 2007, and it's long after Ms. Snook is gone that Mr. Lehman tells Dr. Weiss, oh, don't worry, they'll have to put all pain doctors in jail. You don't think they're going to come from Kentucky to get you, do they? And it's long. She has nothing. Ms. Snook had nothing to do with Cincinnati. The clinic was set up in 2006, and Ms. Snook isn't there when Mr. Lehman meets with the doctor in Cincinnati, Dr. Naramore, and tells him, look, you prescribe what the other doctors have been prescribing, including methadone and oxycodone-containing drugs, or we'll find someone who can. And so that's the heart of the government's case, not whether a prescription was photocopied before or after it was sent. And so we think that the district court did not abuse its discretion in denying the motions on this ground. I'm happy to address any of the other issues in the case if the court has any questions. Well, we'll leave that to you unless you want to rely on your brief for the other issues. Well, Your Honor, I would like to just mention on the money laundering instruction because there was a clear, obvious error. I know counsel has relied on his brief. And just make clear that this was the plain-error standard, and it was absolutely clear once the jury found. There was an error in the instruction about whether the defendant had to have knowledge that the funds that were laundered were the proceeds of unlawful activity. But once the jury, which it did, convicted and was correctly instructed on the drug conspiracy count, where it had to find that he knew of the unlawful activity, then there was no question and no dispute at any time of trial that the funds themselves were the proceeds of the clinics. And so if he knew that the clinics were operating unlawfully. In fact, Mr. Lehman argued this to the jury in his closing argument, that the knowledge element for the two crimes is exactly the same. And we would agree with that to the extent that the error in the instruction, he cannot show, he cannot bear his burden on plain-error review to show that it affected his substantial rights. And if the court has no further questions, thank you. Thank you. Any rebuttal? Yes, Your Honor. Counsel is correct in some of the statements she has made, but I would respectfully disagree with her. The only direct evidence against Lehman, and there was all kinds of evidence about the clinics and about the doctors and the patients and the prescriptions, the only direct evidence of Lehman's knowledge, because he had separated himself from this, was Tanya Snook. And that's why it's so vital that this testimony she gave at Entry 142 at page, I think, 640, when asked by the government, did you forge prescriptions or change prescriptions for patients? She said, for patients, yes. There were just two. The two I pled guilty to for Tackett and Hall. And that's it, period. And that's not the case. And when she said she did write Bindu. So the case is there were three instead of two? Excuse me? So the real case then is that she did it three times instead of twice? No. The real case is that she said that she only changed two prescriptions, and those were the prescriptions and records that she pled guilty to, that she had got the 46 months that was suspended. But that was not the case. The records in evidence, and if the court would permit, I would like to submit those either now or at a later time, because they show clearly that she's the only one that could have done this. All I'm trying to figure out is you say she only said she did it twice, and that's not true. So how many times do you say she did it? Well, we know she did it two other times for Brenda Goldwyn and Larry Goble. Okay. Now there's no proof beyond that, beyond then the four times, right? So the problem here, ignoring photocopying, not photocopying, is she said she only did it twice. You say the evidence in the record shows she did it four times, right? For that you get a new trial. Yes. Among the other things, you said yes. Okay. That's correct. Just trying to put it in context here. Perjury is perjury, whether it's one little bit, or she said she did a hundred, or there's records of a hundred forgeries. She stated unequivocally there were two. Did you argue to the jury that she actually had forged more than the two prescriptions that she admitted to, as the government counsel has argued? Yes, the trial counsel argued that to the jury, and I think made a demonstrative display of the prescriptions and the medical record. So the only thing, arguably, the jury was lacking was the government standing up and saying, I agree she lied in that point. No, the only thing that was lacking is the government recalling her on its case and saying, what about the record here? Did you lie? And if she then says, yes, I misspoke or whatever under oath, I lied to the jury here, I think that is very significant and it probably, I believe, would have changed the result of the case. And you have a witness that says, yeah, I lied. And that wasn't in there. Without that, that wasn't in there. All right. I see that you're out of time, Mr. Ponton. Case is submitted.